Mark A. BLACKBURN t/a
Wholesale Rug Outlet

v.

WALKER ORIENTAL RUG GALLERIES, INC., & Richard Walker and
FYI Networks, Inc.

No. CIV.A. 97–5704.

United States District Court,
E.D. Pennsylvania.

April 7, 1998.

Kevin M. French, Hartman Underhill & Brubaker, Lancaster, PA, for Plaintiff.

Stephen W. Armstrong, Peter Breslauer, Montgomery, McCracken, Walker and Rhoads, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the instant motion, Defendants Richard Walker and Walker Oriental Rug Galleries, Inc., seek to have the complaint dismissed for lack of venue under 28 U.S.C. § 1400(a) or in the alternative for failure to state a claim upon which relief can be granted pursuant to 17 U.S.C. § 411, 17 U.S.C. § 412, and 17 U.S.C. § 301. For the reasons which follow, the action shall be transferred to the Western District of Pennsylvania.

### Statement of Facts

Plaintiff, Mark A. Blackburn t/a Wholesale Rug Outlet ("plaintiff" or "Wholesale") is a Lancaster dealer of oriental rugs. Wholesale created an Internet Web Site, located at the Internet address, www.wholesalerug.com. Wholesale's Web Site contains graphics illustrating the various types of rugs sold by the plaintiff, accompanied by text that gives a description of each rug. Plaintiff alleges that defendants, Richard Walker and Walker Oriental Rug Galleries, Inc. ("defendants" or "Walker"), as well as FYI Networks, Inc. ("FYI") copied parts of Wholesale's Web Site which plaintiff alleges to be protected under the federal copyright law. Plaintiff also alleges unfair trade practices and tortious interference with existing and prospective contractual relations. Richard Walker is the owner of the Pittsburgh-area rug store which allegedly copied the Web Site and FYI Networks is a Pittsburgh-area Internet service provider which "hosted," or housed Walker's Web Site.

### Discussion

 Defendant argues that the Eastern District of Pennsylvania is an improper venue for the copyright claim. Under 28 U.S.C. § 1400(a) actions for copyright infringement may be brought "in the district in which the defendant or his agent resides or may be found." *General Instrument Corporation of Delaware v. Lake Sylvan Sales, Inc.*, 1993 WL 496588 (E.D.Pa.1993); *see Horne v. Adolph Coors Company*, 684 F.2d 255, 260 (3d Cir.1982). A defendant of a copyright claim "may be found" wherever the defendant is amenable to personal jurisdiction. *Donner v. Tams–Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1243–35 (E.D.Pa. 1979). Furthermore, venue in a copyright action is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state.[1] *Columbia Pictures Television v. Krypton Broadcasting*, 106 F.3d 284, 289 (9th Cir.1997); *Milwaukee Concrete Studios v. Fjeld Manufacturing Co.*, 8 F.3d 441, 445–47 (7th Cir.1993). In order to determine where the alleged infringer "may be found" for purposes of establishing venue, the district court must consider the alleged infringer's contacts with the particular federal district in the state. *Milwaukee Concrete Studios*, 8 F.3d at 445–47. It thus follows that the alleged infringer's amenability to personal jurisdiction must relate to the judicial district in which the claim was commenced in order for venue to be proper under 28 U.S.C. § 1400(a).[2] *Id.* Plaintiff contends that venue is proper because the defendant has sufficient contacts with the Eastern District of Pennsylvania to establish that the defendant is amenable to personal jurisdiction and, thus, "may be found" in the district. Specifically, the plaintiff argues that the defendant allegedly continues to: (1) cause harm and tortious injury to the plaintiff through its continued infringement of the plaintiff's copyright in the district and (2) solicit business in the district through the use of an interactive web site.

 Under *Milwaukee Concrete Studios*, the court must now consider the type of contacts defendants have with the district as alleged by the plaintiff. However, this task becomes more difficult because the Internet is a fairly recent phenomenon that is increasingly transforming the way business is conducted in today's global society. *Zippo Mfg. Co. v. Zippo Dot Com., Inc.*, 952 F.Supp. 1119, 1123 (W.D.Pa.1997). It is now possible to complete business transactions throughout the world completely from a desktop via the Internet. *Id.* In analyzing a defendant's contacts through the use of the Internet, the probability that personal jurisdiction may be constitutionally exercised is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. Three types of contacts have been identified in order to determine the existence of personal jurisdiction. *Weber v. Jolly Hotels*, 977 F.Supp. 327, 333 (D.N.J.1997). The first type of contact is when the defendant clearly does business over the Internet. *Id.* "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Zippo*, 952 F.Supp. at 1124 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996)). The second type of contact occurs when "a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Zippo*, 952 F.Supp. at 1124 (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996)); *Weber*, 977 F.Supp. at 333. The third type of contact involves the posting of information or advertisements on an Internet Web Site "which is accessible to users in foreign jurisdictions."

---

1. 28 U.S.C. § 1400 states:
 Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works may be instituted in the district in which the defendant or his agent resides or may be found.

2. There is a paucity of case authority on the issue concerning contacts with the district in a copyright venue action where the action was brought in a district without substantial contacts, but the state itself was proper. *Milwaukee Concrete Studios*, 8 F.3d at 447.

*Zippo,* 952 F.Supp. at 1124; *see Weber,* 977 F.Supp. at 333; *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). Personal jurisdiction is not exercised for this type of contact because "a finding of jurisdiction ... based on an Internet web site would mean that there would be nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with personal jurisdiction case law...." *Weber,* 977 F.Supp. at 333 (quoting *Hearst Corp. v. Goldberger,* 1997 WL 97097, at *1 (S.D.N.Y.Feb.26, 1997)).

■ Despite plaintiff's contentions, the nature of defendants' contacts with this district falls into the third category consisting of a passive Web Site. The plaintiff claims that the purpose of its Wholesale Rug Web Site was to allow users of the Internet and potential customers to view the various types of oriental rugs sold by them and to provide such users with detailed descriptions of their various rugs. The plaintiff also claims that the web site provides information on the maintenance and care of oriental rugs, an area where the visitor can pose questions to the company regarding oriental rugs, and other advertising for the company. Wholesale Rug's Web Site is essentially an advertisement and that is what plaintiff claims it to be. Because plaintiff alleges that defendant produced an exact reproduction of substantial portions of the Wholesale Rug Web Site, it logically follows that defendants' Web Site is an advertisement as well.

An advertisement on a Web Site is akin to an advertising in a national publication. *Weber,* 977 F.Supp. at 333; *Hearst,* 1997 WL 97097, at *10. It is well established in the Third Circuit that advertising in national publications does not form "continuous and substantial" contacts with the forum state. *Weber,* 977 F.Supp. at 333 (citing *Gehling v. St. George's School of Medicine,* 773 F.2d 539, 542 (3d Cir.1985)). Therefore, advertising on a Web Site does not form continuous and substantial contacts with the forum district.

Nevertheless, plaintiff argues that defendants' Web Site is analogous to the middle ground level of contact as articulated by the Eastern District of Missouri in *Maritz.* In *Maritz,* the defendant actively solicited potential customers for their Internet service to provide their e-mail addresses so that defendant could in turn setup electronic mailboxes through which they would send advertisements customized to the users' specific interests. *Maritz,* 947 F.Supp. at 1330. The action was sufficient to establish personal jurisdiction because, *inter alia,* defendant indiscriminately responded to every Internet user who accessed its web site. *Id.* at 1330.

Creating a Web Site may be felt nation or even world wide, but without more, it is not an act purposefully directed toward the forum. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997). In *Cybersell,* there was very limited interactivity between the defendant corporation and internet users, which included receiving the browser's name and address as well as an indication of interest. *Id.* at 419. Those who were interested in getting on the World Wide Web were encouraged to e-mail the defendants to learn how. *Id.* at 416. Signing up for the Cybersell service in Florida was not an option, nor did any Arizona residents do so. *Id.* at 419. No business transactions occurred either. *Id.* Therefore, the Web Site of Cybersell of Florida was one of a passive nature and the defendants did not have sufficient contacts to subject themselves to jurisdiction in Arizona. *Id.* at 420.

The defendants' Web Site is passive like the Web Site in *Cybersell.* The link provided by the defendant in the case at hand is one that the reader may use to send a message to the defendant via e-mail. There is no option to purchase rugs from defendant, nor have any purchases from the Eastern District been alleged. The e-mail link alone is not enough to establish jurisdiction and plaintiff has not demonstrated that the nature and quality of the commercial activity was sufficient to classify the defendants' Web Site as anything more than passive. Because defendants' Web Site was only passive, defendant does not have sufficient contacts with the Eastern District of Pennsylvania to be susceptible to personal jurisdiction and, therefore, venue is improper.

**640**

The question remains whether this court should dismiss this action for improper venue or transfer the action to the Western District of Pennsylvania. The court may "in the interest of justice," pursuant to 28 U.S.C. § 1406(a), transfer the action against the defendants to a district where the action originally could have been brought. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). As defendant Walker resides and does business in the Western District of Pennsylvania, he is amenable to personal jurisdiction in that district. Thus, the Western District is the proper forum for purposes of venue in this action. Therefore, a transfer is ordered to the Western District of Pennsylvania where the action could have been brought.

An appropriate order follows.

### ORDER

AND NOW, this 7th day of April, 1998, upon consideration of Defendants' Motion to Dismiss for Improper Venue or, In The Alternative, For Failure to State a Claim Upon Which Relief Can Be Granted and Plaintiff's Response thereto, it is hereby ORDERED that this action is Transferred to the United States District Court for the Western District of Pennsylvania.

It is further ORDERED that the Clerk of Court is hereby DIRECTED to transfer this action to the United States District Court for the Western District of Pennsylvania.