J-A25038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| AARON RICHMAN, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF INSTITUTE OF TERRORISM RESEARCH AND RESPONSE, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL PERELMAN | |
| Appellee | No. 953 EDA 2014 |

Appeal from the Order Entered on February 27, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: No. 4321, July Term 2013

BEFORE: DONOHUE, J., WECHT, J., and PLATT, J.[*]

CONCURRING MEMORANDUM BY WECHT, J.:          **FILED APRIL 21, 2015**

I join the learned majority's disposition and rationale. I write separately to clarify the grounds of my agreement. I also wish to address Aaron Richman's arguments that the trial court erred because it made findings of fact based in part upon Michael Perelman's unverified responsive pleadings, and that the trial court should have *sua sponte* amended the alignment of the parties in a way that would have established Philadelphia County as a proper venue in which to try this case.

I agree with the majority's implicit reliance upon Richman's pleading alone in finding that Richman established no factual issue precluding the

---

[*]     Retired Senior Judge assigned to the Superior Court.

transfer of venue to York County without further discovery and fact-finding. Although the majority does not say it in so many words, it is clear that the majority's reasoning requires no reliance upon the assertions of Perelman's pleading. Thus, the majority neither engages in, nor endorses any trial court engagement in, fact-finding, which is improper in resolving preliminary objections. *See Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011) ("When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom.").

Although Richman maintains that the Institute of Terrorism Research and Response, Inc. ("ITRR"), was headquartered in Philadelphia, his bald assertions to that effect are called into doubt by his own pleading, read as a whole. *See* Richman's Response in Opposition to Preliminary Objections at 4 ¶ 9 (citing unspecified Philadelphia clientele, marketing the Philadelphia post office box, and use of Philadelphia bank branches in support of venue, but citing only the sporadic leasing of temporary office space in Philadelphia as evidence of physical presence), 7-8 ¶ 17 (denying only that "many" bills are sent to the York County address). He further describes corporate activities in Philadelphia that, when the assertions are read collectively, do not establish, even on a reading most generous to Richman's claims, that ITRR was headquartered in any meaningful sense of that word in Philadelphia. Rather, the substance of his pleadings, if not the legal conclusions drawn therein, establish that ITRR's alleged associations with Philadelphia consist of

- 2 -

Richman's and Perelman's desire to market ITRR as a company based in a more cosmopolitan location than the York County address registered with Pennsylvania's Department of State. Richman's voluminous attachment of various correspondence in which ITRR listed a Philadelphia address and phone number to his pleadings is no match for his failure to assert that Perelman conducted ITRR business anywhere but at the York County address at which he was served and at which ITRR is registered. Furthermore, he provides no legal authority to support the proposition that such a marketing ploy by itself establishes that a company is headquartered in that locale rather than at its registered address, nor is any such conclusion self-evident.

More importantly, though, the extent to which ITRR conducts business from Philadelphia County is, at most, of limited utility in answering the governing transaction or occurrence inquiry under Pa.R.C.P. 1006, which rule makes no reference to the location of a plaintiff's business or the business of an individual defendant sued as such. *See* Maj. Mem. at 6-7. The trial court and the majority both make clear, and I agree, that Rule 1006 is the rule that exclusively governs the present inquiry; Pa.R.C.P. 2179, governing venue in suits brought against corporate defendants, simply has no application to this case, in which the defendant unequivocally has been sued as an individual. *See* Maj. Mem. at 8. Thus, ITRR's headquartering only bears upon venue to the extent that it anchors the sued-upon transactions or occurrences in Philadelphia County, which Richman must do to establish venue under Rule 1006.

As the majority holds, Philadelphia County is a proper venue in this matter only if Perelman adequately pleads a basis upon which the court may find that the transactions or occurrences at issue herein occurred in Philadelphia County. *See* Maj. Mem. at 9.

Relevantly, we have held as follows:

> Pennsylvania courts have interpreted a transaction or occurrence to require that a transaction[,]and not merely some part of the transaction, take place in the county where venue is laid because it would lead only to confusion and a practice which we have heretofore referred to as forum[-]shopping if the law were to permit suit to be commenced against a defendant in any county where any facet of a complex transaction occurred. Therefore, parties cannot avoid the transaction requirement by characterizing a part of a transaction as an occurrence.

*Kring v. Univ. of Pittsburgh*, 829 A.2d 673, 678 (Pa. Super. 2003) (citing *Craig v. W.J. Thiele & Sons, Inc.*, 149 A.2d 35 (Pa. 1959); *Sunderland v. R.A. Barlow Homebuilders*, 791 A.2d 384, 392 (Pa. Super. 2002)) (internal quotation marks, citations, and modifications omitted; remaining modifications added).

In *Estate of Werner ex rel. Werner v. Werner*, 781 A.2d 188 (Pa. Super. 2001), applying the principles set forth in *Craig*, this Court reviewed a challenge to venue in connection with a claim for civil conspiracy. The elements of civil conspiracy involve (1) a combination of two or more persons acting with a common person to do an illegal act or a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *Id.* at

191. The appellants in that case contended that "any overt act undertaken by any conspirator in furtherance of the common design was sufficient to establish venue wherever the overt act occurred." *Id.* (internal quotation marks omitted). We disagreed.

Reviewing the appellants' pleadings, we discerned that one of the alleged occurrences was a meeting in the desired venue years before the conspiracy at issue emerged. We held that, "[e]ven assuming *arguendo* that this meeting . . . evidence[d] the beginnings of a civil conspiracy, its relation to the underlying wrongful acts . . . [was] tenuous at best." *Id.* Thus, it constituted no more than "a mere facet of the complex transactions" alleged by the appellants, and failed to establish a basis for venue in the county in which it occurred. *Id.* at 191-92. We also held that the preparation in the desired venue of a number of documents pertinent to the alleged conspiracy did not suffice, without more, to establish venue, in part because the challenged stock transactions underlying the conspiracy claim undisputedly had not occurred in that county. *Id.* at 192.

In this case, setting aside Richman's irrelevant claims regarding ITRR's supposed Philadelphia headquarters, but accepting the balance of his allegations as true, he essentially alleges that the transactions upon which his claims rest occurred in Philadelphia for three reasons: (1) some of ITRR's receivables were delivered to ITRR's Philadelphia post office box and deposited in one or more Philadelphia branches of an internationally held, multi-state bank (with a significant proportion of receivables undisputedly

reaching ITRR's account by wire transfer); (2) the monies allegedly converted by Perelman necessarily had already been drawn from, and might in the future be drawn from, monies deposited in Philadelphia; and (3) Perelman's alleged removal of Richman's authority to access ITRR's bank account affected his business dealings in Philadelphia.[1]  **See** Complaint at 3 ¶ 8.

Richman's claims materially sound in conversion and breach of fiduciary duty.  The breaches of fiduciary duty alleged by Richman are couched in terms materially indistinguishable from the facts asserted in support of Richman's conversion claim (augmented by Richman's claims that Perelman improperly froze Richman out of ITRR's corporate account).  Under Pennsylvania law, conversion occurs where one deprives another of his right to property in, or use or possession of, a chattel, or otherwise interferes therewith, without consent or justification.  **HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.**, 107 A.3d 114, 119 (Pa. Super. 2014).[2]

Notably absent from Richman's pleading is a clear and encompassing connection between the elements of conversion and Philadelphia County,

---

[1]  This last point appears only to be relevant if we privilege Richman's allegations that ITRR is headquartered in Philadelphia County, because Richman's (disputed) United States Residence does not lie in that county. **See** Complaint at 2 ¶ 2 (averring that Richman's residence is in Elkins Park, Pennsylvania, which is located in Montgomery County).

[2]  Money may be the subject of a conversion claim. **See Pittsburgh Constr. Co. v. Griffith**, 834 A.2d 572, 581 (Pa. Super. 2003).

notwithstanding his more strained averments to that effect. Nothing in Richman's pleading asserts an act undertaken by Perelman that occurred in, or was materially connected to, Philadelphia County. Indeed, Richman does not aver that Perelman took any affirmative steps in service of his alleged wrong-doing in Philadelphia County, instead concentrating on Philadelphia as the *situs* of the injury, which, Richman contends, furnishes a sufficient basis to establish venue. ***See, e.g.***, Brief for Richman at 15 (citing ***Action Indust., Inc., v. Wiedeman***, 346 A.2d 798 (Pa. Super. 1975)) ("For the purposes of assessing venue, tort causes of action, such as conversion, arise where injury is inflicted.").

It is true that Richman alleges connections between the conversion and moneys that flowed through the Philadelphia post office box, but that, by itself, would be only one aspect of the complained-of acts. As well, because Richman does not allege that Perelman deliberately targeted those monies as opposed to other monies belonging to the corporation and situated in a national bank,[3] any connection at all between the conversion and Philadelphia is partial and at least as attenuated as the connections upon which the venue argument that we rejected in ***Werner*** was based. Consequently, even reading Richman's complaint entirely in isolation from

_____

[3] This is germane due to the absence of dispute that a significant volume of receivables arrives in ITRR's account by wire transfer, fundamentally a mechanism with scant geographical association.

Perelman's responsive pleadings, Richman fails to satisfy our time-honored principle that all—or at the very least all of the critical—aspects of the sued-upon transactions must have occurred in the venue in which the plaintiff seeks to pursue his claims.

*Werner* is not at odds with *Action Industries*, at least not as they apply to this case. It is true that the latter case suggested that the locus of the injury in a conversion case may establish a basis for venue in that county. *See Action Industries*, 346 A.2d at 805. Although there may be a degree of tension between these interrelated precepts, in the instant case there is no affirmative allegation that ITRR's or Richman's alleged injuries were suffered in Philadelphia County. With respect to ITRR as plaintiff, the above discussion makes clear why ITRR's injuries cannot fairly be said to have arisen in Philadelphia County, where it was anchored solely by certain banking transactions and a post office box set up primarily for marketing purposes. Similarly, Richman's injuries cannot be situated in Philadelphia County, given his at best sporadic conduct of business there and his avowed residence in Montgomery County.

This analysis also dispenses with Richman's contention that Perelman's failure to provide a verification in support of his preliminary objections effectively obviated his stated objections to venue. *See* Brief for Richman at 11-12. Even if, as Richman contends, Perelman's failure to verify his pleading obligated the trial court to deem all of Richman's averments to have been admitted, our analysis would lead to the same place. That

analysis requires no recourse to Perelman's averments; it stands on no other ground than Richman's own allegations. It is also worth noting that the proper response to an unverified pleading is to be ventured by preliminary objections. Neither did Richman file preliminary objections to Perelman's preliminary objections nor did he raise the lack of a verification in his response in opposition to Perelman's preliminary objections. Consequently, any such challenge was waived for purposes of appellate review. **See Gen. Mills, Inc., v. Snavely**, 199 A.2d 540, 544 (Pa. Super. 1964) (holding that, where the trial court *sua sponte* raised problems associated with a verification but the responding party had made no such objection, the verification issue was waived under Pa.R.C.P. 1032).

Finally, I wish to emphasize that, at no time before the trial court or this Court has Richman argued that the trial court erred in declining to allow him to amend his complaint to set forth additional allegations in support of venue. The closest he has come is to suggest that the trial court could have amended the caption to realign ITRR as a defendant, thus bringing Rule 2179 into the equation in such a way as to establish venue in Philadelphia. **See** Brief for Richman at 20-21. He has failed to establish any legal basis upon which the trial court was bound to do so, and acknowledges that he did not seek such relief from the trial court in the first instance. Consequently, these arguments, too, are waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court . . . cannot be raised for the first time on appeal.").

For all the foregoing reasons, Richman's arguments are unavailing. Consequently, I join the learned majority's disposition, and its reliance upon Richman's failure to plead a sufficient nexus between the complained-of transactions and occurrences and Philadelphia County.

Judge Donohue joins this concurring memorandum.